UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

        v.

JUAN ZARAGOZA,
ANGELICA MARIA RODRIGUEZ,
PAUL ANTHONY KOZINA, and
IRMA CORONA,

    Defendants.
_____/

No.  CR 08-0083 PJH

**FINAL PRETRIAL ORDER**

This matter came before the court for a pretrial conference on December 22, 2010. At the conference, the court ruled on the motions in limine and other pretrial issues as stated on the record and summarized below.

**A.    Rodriguez's Motion for a Duress Instruction**

Rodriguez clarified at the hearing that she seeks to have the court give Ninth Circuit Model Criminal Jury Instruction No. 6.5 (Sept. 2010 ed.), and the government agreed that was the pertinent instruction although it disagreed that Rodriguez was entitled to the instruction.[1] The duress instruction, and Rodriguez's duress defense, are based primarily

---

[1] The court notes that previously, Instr. No. 6.5 was numbered 6.6, and that the Ninth Circuit model instructions used to contain two duress instructions, Nos. 6.5 and 6.6. However, in the September 2010 edition, the prior version of No. 6.5 was eliminated and what was

on Rodriguez's claim that she suffers from Battered Woman's Syndrome ("BWS"), due to the emotional and physical abuse inflicted on her by her husband and codefendant, Paul Kozina.

The parties' arguments and the court's concerns regarding this issue are set forth extensively on the record. Having considered the parties' arguments and the relevant authority, the court concludes that Rodriguez may present a duress defense based on BWS. *See United States v. Johnson*, 956 F.2d 894, 898-901 (9th Cir. 1992); *United States v. Homick*, 964 F.2d 899, 905-906 (9th Cir. 1992). The court, however, DEFERS ruling on Rodriguez's entitlement to a duress instruction until after the evidence has been presented and a determination is made whether the evidence supports the defense. *See United States v. Contento-Pachon*, 723 F.2d 691, 693 (9th Cir. 1984); *United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008). As noted at the hearing, the court finds Rodriguez's offer of proof as to the first and third elements of the duress defense, as set forth in Model Instr. No. 6.5, particularly thin, but will nonetheless permit the defense to proceed subject to a motion to strike should the evidence actually presented at trial not support the elements of the defense.

Given the absence of any clear federal authority on how BWS intersects with a duress defense, the court imposes certain limitations on the scope of the evidence Rodriguez will be permitted to introduce, including limitations on the testimony from her proffered expert, licensed marriage and family therapist, Linda Barnard. Specifically, Rodriguez will not be permitted to introduce evidence, via her expert or otherwise, regarding abuse she suffered at the hands of people other than Kozina. *See Johnson*, 956 F.2d at 898.

While the court will permit Barnard to testify regarding (1) a description of BWS; (2) the characteristics present in a person suffering from BWS; and (3) the effect of BWS on a reasonable person suffering from it, the court will not permit testimony regarding Barnard's

---

previously No. 6.6 appears to have been revised and is now No. 6.5.

opinion whether Rodriguez's criminal acts were caused by BWS, as that question will remain purely one for the jury to decide. The court deferred, for further briefing, the question whether Barnard will be permitted to offer her opinion that Rodriguez indeed suffers from BWS. Additionally, the further briefing should address the admissibility of Barnard's testimony as to factual matters underlying her opinion, which all appear to come from hearsay and double hearsay of Rodriguez and other family members and friends. The parties should specifically address whether the underlying facts are admissible under FRE 803(4) or whether they are admissible only through the testimony of a percipient witness. Rodriguez's brief on these issues is due **no later than noon on Thursday, January 6, 2011.** The government's response is **due no later than noon on Tuesday, January 11, 2011.** The parties are required to provide the court with courtesy chambers copies of those briefs by the above dates and times as well.

**B.    Government's Motions in Limine ("MIL")**

**1.    MIL to Exclude Expert Witness Testimony Re: Duress**

This motion is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART as set forth above re: Rodriguez's motion for a duress instruction.

**2.    MIL to Permit Expert Witness Testimony by Law Enforcement Agents**

The motion is GRANTED as unopposed with respect to DEA chemists Shana Irby, Kimberly Perusse, Paul Eyerly, and Krista Bernadt, and San Jose Police Department Sergeant Alan Lee. As for FBI Task Force Officer Rafael Varela, the motion is GRANTED as unopposed with respect to the following categories of proffered testimony:  1) the distribution chain of methamphetamine; (2) the approximate dosage amounts for methamphetamine and the street price paid by methamphetamine users; and (3) the prices of bulk amounts of methamphetamine. However, regarding defendants' objection to the reliability of Varela's testimony re: (4) the methods used by methamphetamine traffickers to avoid detection by law enforcement, including but not limited to, counter-surveillance and the use of code words; and (5) terminology and slang used by methamphetamine traffickers, defendants will be permitted to voir dire Varela at the time of trial prior to the

3

court's final determination as to admissibility of this aspect of his opinion. The court reserves ruling regarding whether that voir dire will occur outside the presence of the jury.

### 3. MIL to Exclude Testimony and Argument re: Sentences

The court GRANTS the government's motion to exclude testimony and argument re: punishment. Defendants are not permitted to refer to their potential punishment at any stage of the trial, and the government is similarly not permitted to refer to the consequences of acquittal. Defendants may, of course, examine any testifying codefendant on the subject of their punishment.

### 4. MIL to Exclude Testimony and Argument re: Defendants' Backgrounds

For the reasons stated on the record, this motion is DENIED as vague.

### 5. MIL to Prohibit Discussion of Unsupported Facts During Opening Statements

This motion is GRANTED.

## C. Rodriguez's Motions in Limine

### 1. MIL to Preclude Evidence of Rodriguez's Child

The court DENIES Rodriguez's motion to preclude evidence of the existence and presence of her child while she was allegedly engage in criminal conduct. Given that she will be permitted to introduce BWS evidence in conjunction with her duress defense, and given that the BWS evidence focuses on Rodriguez's particular and personal vulnerabilities, the government is entitled to use her personal circumstances and behavior to attempt to show that she was not particularly vulnerable. Additionally, granting the motion would require that the government witnesses be instructed not to accurately describe what they observed and that the taped conversations be altered, and it is not entirely clear that the tapes could be altered to, for instance, eliminate a baby crying in the background, without destroying or distorting a pertinent and admissible taped conversation between coconspirators. On balance, the court finds that the probative value of evidence outweighs the prejudicial effect of the evidence.

////

### 2. MIL to Preclude Evidence of Witnesses' Immigration Status

The court GRANTS the motion, and rules that the immigration status, for impeachment purposes, of both defense and government witnesses may not be introduced by either side.

### 3. MIL to Preclude Evidence of Mexican Cartel or Mafia

The court GRANTS this motion as unopposed.

### 4. MIL to Exclude Undisclosed Rule 404(b) Evidence

This motion is GRANTED as the government represents that it is currently unaware of any such evidence.

### 5. Motion for Disclosure Deadlines

This motion is GRANTED IN PART and DENIED IN PART. The government represented that it has disclosed all *Brady* material. Jencks Act materials and the remaining Federal Rule of Criminal Procedure 16 disclosures, including the government's expert witness regarding Rodriguez's duress defense, must be disclosed by **Monday, January 10, 2011.** The court declines to rule on the appropriate sanctions for any untimely disclosures until such circumstances arise.

### 6. MIL to Sever Rodriguez's Trial from Zaragoza and Corona

This motion is DENIED as moot based on the ruling below regarding the grouping of defendants for trial.

## D. Rodriguez's and Kozina's Motions to Exclude Wiretap Transcripts

This motion is DENIED because it is not yet ripe.

## E. Grouping of Defendants

Juan Zaragoza, Irma Corona, and Kozina will be tried together jointly commencing **January 24, 2011**, and Rodriguez's trial will follow.

## F. Government's Motion for a Voice Exemplar

The government's motion for a voice exemplar from Zaragoza is GRANTED, and Zaragoza's related request to provide the exemplar over the telephone is DENIED.

////

### G.  Jury Questionnaire

The parties agree that the court's standard juror questionnaire will be utilized.  The court will supplement its voir dire with the questions proffered by the parties.  The jointly proposed questions are acceptable to the court.  The separately proposed questions are for the most part duplicative of the joint questions or of the questions on the questionnaire.  There are a few problematic questions which the court will review with the parties before voir dire begins.

### H.  Jury Instructions

The court has reviewed the jointly submitted preliminary instructions and will utilize those and only those unless the parties substitute or supplement any of those instructions no later than **Monday, January 10, 2011.**  In addition, however, the parties shall submit an instruction descriptive of the action or one that summarizes the charges **no later than Monday, January 10, 2011**.  The court reserves ruling on the disputed end-of-case instructions until the charge conference.

### I.  Verdict form

The jointly prepared verdict form is acceptable.  The court will address the individual additional special verdict interrogatories on lesser included offenses proposed by Rodriguez and Kozina at the charge conference.

### J.  Coconspirator Statements

The government seeks to introduce numerous coconspirator statements against the four remaining defendants under FRE 801(d)(2)(E).  The court's July 28, 2010 pretrial order instructed the parties as follows re: the coconspirator statements:

> In order for a coconspirator statement to be *admissible* at trial under Federal Rule of Evidence 801(d)(2)(E), the prosecution must show by a preponderance of the evidence that: (1) the conspiracy existed when the statement was made; (2) the defendant had knowledge of, and participated in, the conspiracy; and (3) the statement was made "in furtherance" of the conspiracy.  *United States v. Larson*, 460 F.3d 1200, 1212 (9th Cir. 2006).  However, the *introduction* of coconspirator statements is distinct from the issue of *admissibility*.  That is in part because the court considers all of the evidence, even the defendants' evidence, in making the ultimate admissibility determination.  *See* Graham, Federal Practice & Procedure, Evidence § 7025, at 316-17 (2006 ed. & 2009 suppl.) ("[a]t the conclusion of the

presentation of evidence, the trial court on motion must determine *on all the evidence including evidence offered by the defendant* whether the government has established the requisite foundation") (emphasis added).

It is within this court's discretion to determine the order of proof or the showing, if any, that is appropriate prior to the government's *introduction* of the coconspirator statements. *United States v. Arbelaez*, 719 F.2d 1453, 1460 (9th Cir. 1983) (concluding that it was not an abuse of discretion for the court to allow the government to introduce coconspirator statements prior to establishing prima facie the existence of a conspiracy). Courts have utilized various approaches regarding the order of proof. This court utilizes what has been deemed the "middle course," which requires the government to make a preliminary showing or summary of its evidence establishing the predicate facts, while deferring the final decision until the conclusion of the presentation of the evidence. *See* Mueller & Kirkpatrick, 4 Federal Evidence, at § 8:62; *see also United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991) (the "preferable procedure would be to at least require the government to preview the evidence which it believes brings the statements within the coconspirator rule before delving into the evidence at trial").

In accordance with this approach, the court will preview prior to trial a summary of the coconspirator statements to be offered by the government. Following this preview, the court will determine which statements the government will be permitted to introduce, either through the testimony of a witness or by documentary evidence. Even though the ultimate finding as to admissibility will not be made until after the trial has commenced and perhaps as late as the close of the evidence, the witnesses will be permitted to testify about coconspirator statements and documents containing such statements will be published to the jury, subject to striking should the government not be able to meet its burden as to all requirements for admissibility. In this sense, the government's introduction of the statements which will have been previewed and approved by the court, will result in their conditional admission.

The court *may* at some point during trial, and prior to the close of the evidence, rule on whether the government has shown by a preponderance of the evidence two of the three prongs required for the admissibility of all of the proffered coconspirator statements, including that (1) the conspiracy existed when the statement was made; and (2) that the defendant had knowledge of, and participated in, the conspiracy. *Larson*, 460 F.3d at 1212. The court, however, will not determine until *after* the witness testifies and/or the documentary evidence containing the particular coconspirator statement is introduced whether or not the government has shown by a preponderance of the evidence that the statement was made "in furtherance" of the conspiracy. *See id.* A coconspirator statement will NOT be unconditionally admitted into evidence until the court has determined that all three *Larson* prongs have been satisfied as to that statement.

The government is required to file and serve a list of the coconspirator statements to be introduced at trial. In connection with each of the coconspirator statements, the government should provide the following information:

(1) the identity of the testifying witness and/or the source of the conspirator statement;

7

> (2) a statement describing the witness and/or the source of the conspirator statement;
>
> (3) a summary of the evidence showing that the proffering witness, if a coconspirator, knew about and participated in the conspiracy;
>
> (4) the *specific* coconspirator statements to be introduced via that witness and/or the source of the conspirator statement;
> (5) the identity of the declarant of *each* specific coconspirator statement; and
>
> (6) a summary of the evidence showing that *each* declarant of the coconspirator statement(s) knew about and participated in the conspiracy.

Subsequently, the government filed its notice of coconspirator statements, along with two voluminous binders, broken down into six sections, A-F, with six accompanying summary charts, and a total of 168 exhibits. Each of those exhibits contain multiple coconspirator statements. All four defendants filed objections to the statements, including both specific and general objections.

At the December 22, 2010 pretrial conference, the government clarified that it seeks to admit all 168 exhibits, irrespective of the "section" in the binders in which the statements are contained, as to all four defendants.

The government's proffered coconspirator statements include statements made by numerous declarants - not just the remaining defendants. Some of the declarants include the remaining defendants; some are indicted coconspirators who have already pled guilty; and others have not been identified. The court's review of the statements reveals that they appear to have been made by a total of approximately twenty declarants, including the four remaining defendants, Guillermo Zaragoza, Eduardo Zaragoza, Martin Zaragoza, Martel Valencia, Hugo Castaneda, Carlos Last Name Unknown ("LNU"), Roberto Ruiz Zaragoza, Manuel Corona, Raymundo Barron, "Pepe," Jaime Duran, "Chente," David Weld, "Pino," "Josephina," "Anita," and in some cases, a few unknown or yet unidentified declarants.

As noted, several of the above declarants are codefendants who have already pled guilty to the conspiracy charged in count one, including Guillermo Zaragoza, Eduardo Zaragoza, Martin Zaragoza, Martel Valencia, Manuel Corona, Jaime Duran, and David

8

Weld. Additionally, declarant Roberto Ruiz Zaragoza is charged in the indictment but remains a fugitive.

However, there are a number of declarants whom the government has failed to adequately identify, let alone sufficiently connect to the conspiracy for purposes of FRE 801(d)(2)(E). Those include Hugo Castaneda, Carlos LNU, "Pepe," "Chente," "Pino," "Josephina," "Anita," and other unidentified declarants. Contrary to the government's argument at the hearing, the fact that these declarants simply conversed with another coconspirator over a wiretap(s) does not provide a sufficient showing that the unidentified declarant is also a member of the same conspiracy as the accused. *See United States v. Williams*, 989 F.2d 1061, 1068 (9th Cir. 1993). For these reasons, the following exhibits are excluded: Govt. Exhs. 8, 71, 72, 73, 78, 120, 121, 136, 141, 151, 157, 161, 163, 164.

As for the remaining defendants and the other defendants who have pled guilty, along with RR Zaragoza who remains a fugitive, the court finds that the government has made a sufficient prima facie showing based on the statements themselves and other independent evidence, consisting primarily of the plea agreements and police reports, that the remaining defendants were members of the same conspiracy as those declarants.

Review of the plea agreements reflects this is the case. In his plea agreement, G Zaragoza admitted to conspiring with M Zaragoza, E Zaragoza, J Zaragoza, Rodriguez, Kozina, M Corona, I Corona, RR Zaragoza, Martel Valencia, David Quezada, and Jaime Duran. Docket No. 184. Similarly, in his plea agreement, E Zaragoza admitted to conspiring with M Zaragoza, G Zaragoza, J Zaragoza, Rodriguez, Kozina, RR Zaragoza, Martel Valencia, Lorenzo Carbajal, Richard Parodi, and others. Docket No. 199. Manuel Corona admitted to conspiring with G Zaragoza, RR Zaragoza, Irma Corona, Raymundo Barron, Raul Reyes Castro, and others. Docket No. 273.

Martin Zaragoza likewise admitted to conspiring with G Zaragoza, E Zaragoza J, Zaragoza, David Weld, Richard Parodi, Lorenzo Carbajal, RR Zaragoza, Martel Valencia, and David Quezada. Jaime Duran admitted to conspiring with G Zaragoza, E Zaragoza, and others, Docket No. 266; and Martel Valencia admitted to conspiring with David

Quezada, G Zaragoza, J Zaragoza, M Zaragoza, E Zaragoza, M Corona, Rodriguez, Paul Kozina, I Corona, David Weld, and others.[2]  Docket No. 548.

Moreover, the court further finds that the government has made a sufficient prima facie showing at this stage that the coconspirator statements made by declarants Guillermo Zaragoza, Eduardo Zaragoza, Martin Zaragoza, Martel Valencia, Manuel Corona, Jaime Duran, David Weld, and by the four remaining defendants - Rodriguez, Kozina, I Corona, and J Zaragoza - may all be introduced as to each of the four remaining defendants.

A person may be a member of a conspiracy even though the person does not know all of the purposes of or participants in the conspiracy. *United States v. Escalante*, 637 F.2d 1197, 1200 (9th Cir. 1980); *United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir. 1977). To prove a single conspiracy the evidence must show that each defendant knew, or had reason to know, that other retailers were involved and that his benefits were "probably" dependent on the success of the entire operation. *United States v. Arbelaez*, 719 F.2d 1453, 1458 (9th Cir. 1983) (citing *United States v. Baxter*, 492 F.2d 150, 158 (9th Cir. 1973)). The government does "not need to show direct contact or explicit agreement between the defendants." *Id.* (quoting *United States v. Kostoff*, 585 F.2d 378, 380 (9th Cir. 1978)). Actual knowledge or awareness of "the identity, number or location of the other participating retailers" is not required. *Baxter*, 492 F.2d at 158; *see also United States v. Smith*, 609 F.2d 1294, 1298-1300 (9th Cir. 1979). Only a slight connection to a conspiracy is sufficient to convict a defendant of knowing participation in it. *Arbelaez*, 719 F.2d at 1458.

There is sufficient evidence suggesting that all four of the remaining defendants knew *or had reason to know* that other coconspirators were involved in drug trafficking with Guillermo Zaragoza, with whom each of the defendants directly conspired - even if they did not know the other coconspirators by name. Additionally, each of the remaining defendants had reason to believe that whatever benefits they might receive from the conspiracy were

---

[2]Weld's plea agreement is under seal, and the court will not reveal any representations made therein.

10

probably dependent upon the success of the entire venture. In other words, each of the remaining codefendants had reason to know Guillermo Zaragoza was supplying other retailers and/or that Guillermo Zaragoza was dependent on his own supplier or suppliers in order to supply them.

For example, in a conversation with Guillermo Zaragoza, Rodriguez references "Juan," and also references "Lalo," otherwise known as Eduardo Zaragoza. *See* Govt. Exh. 48. Additionally, in other conversations between Guillermo Zaragoza and Rodriguez, including some in which Kozina participated, G Zaragoza makes references to other unnamed persons with whom he is communicating and dealing, including "the guy." *See* Govt. Exh. 5; *see also* Govt. Exh. 30 (G Zaragoza notes that he "set aside the larger stuff" for Rodriguez and Kozina and gave "all of the small stuff" to "some guys that aren't as picky [as Rodriguez and Kozina]").

As for J Zaragoza, he was arrested with another coconspirator, E Zaragoza. Additionally, in conversations between J Zaragoza and G Zaragoza, there are references to other coconspirators, including the "dude" and E Zaragoza. *See* Govt. Exhs. 61, 69.

Finally, I Corona was captured on the wiretaps in conversation with both G Zaragoza and M Corona setting up meeting locations. In his plea agreement, M Corona admitted that he was aware that I Corona knew that money he had directed her to pick up from G Zaragoza was for methamphetamine that G Zaragoza bought from M Corona. Docket No. 273.

For these reasons, with the exception of those exhibits already excluded above, the court concludes that the government has satisfied by a preponderance of the evidence the first two *Larson* prongs with respect to the remaining exhibits as to all four of the remaining defendants. 460 F.3d at 1212. As noted in its July 28, 2010 order, the court nevertheless reserves ruling regarding whether the government has shown by a preponderance of the evidence that the particular coconspirator statements were made "in furtherance" of the conspiracy until after the statements are introduced at trial. *See id.* Additionally, the coconspirator statements will NOT be unconditionally admitted into evidence until the court

11

has determined that all three *Larson* prongs have been satisfied as to each statement.

To the extent they are inconsistent with the court's above findings, defendants' objections to the proffered coconspirator statements are OVERRULED.

**IT IS SO ORDERED.**

Dated: January 5, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge